UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 19- 716 (RBK) |
| | : | |
| v. | : | 18 U.S.C. §§ 1349, 1347, 1343, 371, 1035, |
| | : | and 2 |
| STEVEN MONACO, | : | |
| DANIEL OSWARI, | : | INDICTMENT |
| MICHAEL GOLDIS, and | : | |
| AARON JONES | : | |

The Grand Jury in and for the District of New Jersey, si

## COUNT 1

### (Conspiracy to Commit Health Care Fraud and Wire Fraud)

1.  At all times relevant to this Indictment:

    a.  Defendant STEVEN MONACO was a sales representative for Laboratory 1 and a resident of New Jersey.  MONACO founded and operated SMJ Consultants LLC, a New Jersey limited liability company.

    b.  Defendant DANIEL OSWARI was a physician with a medical practice in Trenton, New Jersey.

    c.  Defendant MICHAEL GOLDIS was a doctor of osteopathy with a medical practice in Stratford, New Jersey.

    d.  Defendant AARON JONES was a medical assistant in the medical practice of defendant MICHAEL GOLDIS.

    e.  Richard Zappala, who is named as a co-conspirator but not as a defendant herein, was a pharmaceutical sales representative.

2.  At all times relevant to this Indictment:

1

a.     In New Jersey, the State Health Benefits Program ("SHBP") offered medical and prescription drug coverage to qualified state and local government public employees, retirees, and eligible dependents.  The School Employees' Health Benefits Program ("SEHBP") offered medical and prescription drug coverage to qualified local education public employees, retirees, and eligible dependents.  SHBP and SEHBP each were "health care benefit programs" that affected commerce as defined in Title 18, United States Code, Section 24(b).

b.     "Pharmacy Benefits Administrator" provided pharmacy benefit management services for SHBP and SEHBP beneficiaries pursuant to a contract with the State of New Jersey.  Pharmacy Benefits Administrator also provided pharmacy benefit management services for beneficiaries of other insurance plans.  Pharmacy Benefits Administrator adjudicated claims for reimbursement from pharmacies and paid pharmacies for valid claims.  Pharmacy Benefits Administrator then billed the State of New Jersey based on the amount paid to the pharmacies for claims on behalf of SHBP and SEHBP beneficiaries and billed other insurance plans based on the amount paid to the pharmacies for claims under other insurance plans.  Pharmacy Benefits Administrator was a "health care benefit program" that affected commerce as defined in Title 18, United States Code, Section 24(b).

c.     In general, compounding was a practice in which a licensed pharmacist combined, mixed, or altered ingredients of one or more drugs in response to a prescription to create a medication tailored to the medical needs of an individual patient.  Compounded drugs were not approved by the United States Food and Drug Administration ("FDA"); that is, the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

d.      Compounded drugs could be appropriately prescribed by a physician when an FDA-approved medication did not meet the health needs of a particular patient.  For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or preservative, a compounded drug could be prepared excluding the ingredient that triggers the allergic reaction.

e.      "Compounding Pharmacy 1" was a pharmacy located in Louisiana that prepared compounded medications.  Compounding Pharmacy 1 received prescriptions for compounded medications via fax from medical practices in New Jersey.  Compounding Pharmacy 1 would fill the prescription by preparing the compounded medication and mailing it to the individual.  Compounding Pharmacy 1 would bill Pharmacy Benefits Administrator for the prescription and receive payment from Pharmacy Benefits Administrator.

f.      "Compounding Pharmacy 2" was a pharmacy located in Pennsylvania that prepared compounded medications.  Compounding Pharmacy 2 received prescriptions for compounded medications via fax from medical practices in New Jersey.  Compounding Pharmacy 2 would fill the prescription by preparing the compounded medication and mailing it to the individual.  Compounding Pharmacy 2 would bill Pharmacy Benefits Administrator for the prescription and receive payment from Pharmacy Benefits Administrator.

g.      "Laboratory 1" was a laboratory located in New Jersey and elsewhere that analyzed patient samples of blood, urine, and other biological materials.

h.      "Individual 1" was a medical professional.  "Individual 19" worked as a medical assistant in the office of defendant DANIEL OSWARI.  Individuals 2 through 18 and 20 through 23 each had a prescription completed for compounded medications from Compounding Pharmacy 1 and/or Compounding Pharmacy 2.

3

3.      From in or about January 2014 through in or about April 2016, in Camden County, in the District of New Jersey, and elsewhere, defendants

STEVEN MONACO,
DANIEL OSWARI,
MICHAEL GOLDIS, and
AARON JONES

did knowingly and intentionally conspire and agree with each other and with Richard Zappala and others to commit certain offenses, namely:

a.      Knowingly and willfully to execute a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, or under the custody and control of, a health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347; and

b.      To devise a scheme and artifice to defraud, and to obtain money and property by means of materially false pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, and sounds, contrary to Title 18, United States Code, Section 1343.

### Object of the Conspiracy

4.      It was the object of the conspiracy for defendants STEVEN MONACO, DANIEL OSWARI, MICHAEL GOLDIS, and AARON JONES and others to unlawfully enrich themselves by causing the submission of false and fraudulent insurance claims for compounded prescription medications to Pharmacy Benefits Administrator, and by receiving a portion of the money that Pharmacy Benefits Administrator paid to Compounding Pharmacy 1 and Compounding Pharmacy 2 for those compounded prescription medications.

4

### Manner and Means of the Conspiracy

5.    It was part of the conspiracy that defendant STEVEN MONACO, Richard Zappala, and others learned that Pharmacy Benefits Administrator would reimburse thousands of dollars for one individual's one-month supply of certain prescription compounded medications, including compounded vitamin combinations, pain creams, scar creams, antifungal creams, and libido creams.

6.    It was further part of the conspiracy that Richard Zappala had agreements to receive a percentage of the amount that Compounding Pharmacy 1 and Compounding Pharmacy 2 received from Pharmacy Benefits Administrator for prescriptions obtained by Richard Zappala and the people working with him.

7.    It was further part of the conspiracy that Richard Zappala secured the agreement of defendant STEVEN MONACO and others, in exchange for a share of the amounts received by Richard Zappala, to recruit individuals who would agree to obtain prescriptions for compounded medications and to find additional recruiters.

8.    It was further part of the conspiracy that Richard Zappala paid, directly or indirectly, a portion of the amounts received from Compounding Pharmacy 1 and Compounding Pharmacy 2 to defendant STEVEN MONACO and others for the prescriptions that they and their recruiters obtained.

9.    It was further part of the conspiracy that defendant STEVEN MONACO, Richard Zappala, and others working with them recruited state and local government and education employees who had benefits under the SHBP and SEHBP and other individuals who had a prescription drug benefit administered by Pharmacy Benefits Administrator.

5

10.     It was further part of the conspiracy that defendant STEVEN MONACO and others paid money and other benefits to individuals to induce and reward them for agreeing to obtain prescriptions for compounded medications from Compounding Pharmacy 1 and Compounding Pharmacy 2.

11.     It was further part of the conspiracy that defendant STEVEN MONACO and others, with no medical training or licenses and with the sole purpose of receiving money from Compounding Pharmacy 1 and Compounding Pharmacy 2, would persuade individuals to agree to obtain compounded prescription medications from Compounding Pharmacy 1 and Compounding Pharmacy 2.

12.     It was further part of the conspiracy that defendant STEVEN MONACO and others would obtain insurance information from individuals and complete and cause the completion of prescriptions for compounded medications on the printed prescription forms of Compounding Pharmacy 1 and Compounding Pharmacy 2, even though the individuals had no medical necessity determined by a doctor for the compounded medications.

13.     It was further part of the conspiracy that defendant STEVEN MONACO and others would specifically select the medications on the printed prescription forms for Compounding Pharmacy 1 and Compounding Pharmacy 2 that had the highest possible insurance reimbursement without any determination of the medical necessity of the medications selected.

14.     It was further part of the conspiracy that defendants STEVEN MONACO and others would have the printed prescription forms for Compounding Pharmacy 1 and Compounding Pharmacy 2 marked to request 11 months of refills in order to obtain the highest

possible insurance reimbursement, without any determination of the medical necessity of receiving the medications for a total of 12 months.

15.    It was further part of the conspiracy that defendant DANIEL OSWARI and others in his medical office would try to persuade his patients to agree to receive prescription compounded medications from Compounding Pharmacy 1 and Compounding Pharmacy 2, even though the patients had no medical necessity for the compounded medications.

16.    It was further part of the conspiracy that defendant STEVEN MONACO and others paid and caused the payment of cash kickbacks and other benefits to defendant DANIEL OSWARI and others for prescriptions signed by OSWARI and filled by Compounding Pharmacy 1 and Compounding Pharmacy 2.

17.    It was further part of the conspiracy that defendants STEVEN MONACO and AARON JONES and Richard Zappala and others secured and caused to be secured the signatures of defendants DANIEL OSWARI and MICHAEL GOLDIS and Individual 1, a medical professional, on the printed prescription forms for Compounding Pharmacy 1 and Compounding Pharmacy 2 for individuals (a) without the doctors or the medical professional having a doctor/patient relationship with the individuals; (b) without the doctors or the medical professional determining that the individuals had a medical necessity for the compounded medication selected; (c) without the doctors or the medical professional considering a non-compounded prescription or over-the-counter medication for the individuals; (d) without the doctors or the medical professional seeing or evaluating the individuals; and/or (e) without the doctors or the medical professional having evaluated whether the compounded medication would have any adverse effect on the individuals.

18.     It was further part of the conspiracy that Richard Zappala paid and caused to be paid money to defendant MICHAEL GOLDIS to induce him to sign and reward him for signing prescriptions for compounded medications.

19.     It was further part of the conspiracy that defendant MICHAEL GOLDIS signed prescriptions for compounded medications and defendant AARON JONES forged the signature of defendant MICHAEL GOLDIS on prescriptions for compounded medications.

20.     It was further part of the conspiracy that defendant STEVEN MONACO paid and caused to be paid money and other benefits to Individual 1, a medical professional, as a kickback for signing prescriptions for compounded medications.

21.     It was further part of the conspiracy that once a Compounding Pharmacy 1 and Compounding Pharmacy 2 printed prescription form was completed with the signature of a doctor or other medical professional, defendants STEVEN MONACO, DANIEL OSWARI, MICHAEL GOLDIS, and AARON JONES and others caused the completed prescription to be sent in interstate commerce via fax from the office of the signing doctor or medical professional in New Jersey to Compounding Pharmacy 1 in Louisiana or Compounding Pharmacy 2 in Pennsylvania, which then filled the prescription and billed Pharmacy Benefits Administrator.

22.     It was further part of the conspiracy that if Pharmacy Benefits Administrator stopped covering a compounded medication prepared by Compounding Pharmacy 1 or Compounding Pharmacy 2, then Compounding Pharmacy 1 and Compounding Pharmacy 2 each would prepare revised printed prescription forms with different compounded medications that Pharmacy Benefits Administrator would cover for thousands of dollars per month per prescription, and defendants STEVEN MONACO, DANIEL OSWARI, MICHAEL GOLDIS, and AARON JONES and others would complete and cause the completion of new prescriptions

8

with this different combination of ingredients without the patients being asked if they consented to the change, without the patients being examined by a doctor, and/or without any determination by a doctor that the new medication with a different combination of ingredients was medically necessary or appropriate for the patient.

23.     It was further part of the conspiracy that defendants STEVEN MONACO, DANIEL OSWARI, MICHAEL GOLDIS, and AARON JONES and others caused Pharmacy Benefits Administrator to pay Compounding Pharmacy 1 and Compounding Pharmacy 2 over $4,500,000 for compounded medications.

In violation of Title 18, United States Code, Section 1349.

## COUNTS 2-14

### (Health Care Fraud)

24.     Paragraphs 1-2 and 4-23 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

25.     On or about the dates listed below, in the District of New Jersey and elsewhere, the defendants specified per count below knowingly and willfully executed a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, or under the custody and control of, a health care benefit program in connection with the delivery of and payment for health care benefits, items, and services:

| Count | Defendant | Date | Execution |
|-------|-----------|------|-----------|
| 2 | DANIEL OSWARI  STEVEN MONACO | 3/23/15 | At the direction of STEVEN MONACO, DANIEL OSWARI signed a Compounding Pharmacy 1 prescription for Individual 2, who was not his patient. |

| 3 | DANIEL OSWARI<br><br>STEVEN MONACO | 3/16/15 | At the direction of STEVEN MONACO, DANIEL OSWARI signed a Compounding Pharmacy 2 prescription for Individual 3, who was not his patient. |
|---|---|---|---|
| 4 | DANIEL OSWARI<br><br>STEVEN MONACO | 5/1/15 | At the direction of STEVEN MONACO, DANIEL OSWARI signed a Compounding Pharmacy 1 prescription for Individual 4. |
| 5 | DANIEL OSWARI<br><br>STEVEN MONACO | 12/23/15 | At the direction of STEVEN MONACO, DANIEL OSWARI signed a Compounding Pharmacy 1 prescription for Individual 5. |
| 6 | DANIEL OSWARI<br><br>STEVEN MONACO | 7/29/15 | At the direction of STEVEN MONACO, DANIEL OSWARI signed a Compounding Pharmacy 1 prescription for Individual 6. |
| 7 | DANIEL OSWARI<br><br>STEVEN MONACO | 12/10/15 | At the direction of STEVEN MONACO, DANIEL OSWARI signed a Compounding Pharmacy 1 prescription for Individual 6. |
| 8 | DANIEL OSWARI<br><br>STEVEN MONACO | 12/10/15 | At the direction of STEVEN MONACO, DANIEL OSWARI signed a Compounding Pharmacy 1 prescription for Individual 7. |
| 9 | MICHAEL GOLDIS | 6/19/15 | MICHAEL GOLDIS signed a Compounding Pharmacy 1 prescription for Individual 8, who was not his patient. |
| 10 | MICHAEL GOLDIS | 7/28/15 | MICHAEL GOLDIS signed a Compounding Pharmacy 1 prescription for Individual 9, who was not his patient. |
| 11 | MICHAEL GOLDIS | 7/28/15 | MICHAEL GOLDIS signed a Compounding Pharmacy 1 prescription for Individual 10, who was not his patient. |
| 12 | MICHAEL GOLDIS | 10/9/15 | MICHAEL GOLDIS signed a Compounding Pharmacy 1 prescription for Individual 11, who has not his patient. |
| 13 | MICHAEL GOLDIS | 10/9/15 | MICHAEL GOLDIS signed a Compounding Pharmacy 1 prescription for Individual 12, who was not his patient. |
| 14 | MICHAEL GOLDIS<br><br>STEVEN MONACO | 7/28/15 | MICHAEL GOLDIS signed a Compounding Pharmacy 1 prescription for Individual 13, who was not his patient. STEVEN MONACO recruited Individual 13. |

In violation of Title 18, United States Code, Section 1347, and Title 18, United States Code, Section 2.

## COUNTS 15-22

### (Wire Fraud)

26.     Paragraphs 1-2 and 4-23 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

27.     On or about the dates listed below, in the District of New Jersey and elsewhere, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, the defendant specified per count below, for the purpose of executing such scheme and artifice, did knowingly and with fraudulent intent transmit and cause to be transmitted by means of wire communications in interstate commerce the following writings, signs, signals, pictures, and sounds:

| Count | Defendant | Date | From | To | Wire Transmission |
|---|---|---|---|---|---|
| 15 | STEVEN MONACO | 6/1/15 | Bordentown, New Jersey | Compounding Pharmacy 1 | Fax transmission of prescription for Individual 14 |
| 16 | STEVEN MONACO | 6/1/15 | Bordentown, New Jersey | Compounding Pharmacy 1 | Fax transmission of prescription for Individual 15 |
| 17 | STEVEN MONACO | 6/1/15 | Bordentown, New Jersey | Compounding Pharmacy 1 | Fax transmission of prescription for Individual 16 |
| 18 | STEVEN MONACO | 6/29/15 | Bordentown, New Jersey | Compounding Pharmacy 1 | Fax transmission of prescription for Individual 17 |

| 19 | DANIEL OSWARI<br><br>STEVEN MONACO | 12/29/15 | Trenton, New Jersey | Compounding Pharmacy 1 | Fax transmission of prescription for Individual 2 |
|----|------|------|------|------|------|
| 20 | DANIEL OSWARI<br><br>STEVEN MONACO | 12/29/15 | Trenton, New Jersey | Compounding Pharmacy 1 | Fax transmission of prescription for Individual 3 |
| 21 | STEVEN MONACO<br><br>MICHAEL GOLDIS | 7/28/15 | Stratford, New Jersey | Compounding Pharmacy 1 | Fax transmission of prescription for Individual 18 |
| 22 | STEVEN MONACO<br><br>MICHAEL GOLDIS | 12/2/15 | Stratford, New Jersey | Compounding Pharmacy 1 | Fax transmission of prescription for Individual 18 |

In violation of Title 18, United States Code, Section 1343, and Title 18, United States Code, Section 2.

## COUNT 23

### (Conspiracy to Violate Anti-Kickback Statute and Travel Act)

28.     Paragraphs 1-2 and 4-23 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

29.     Medicare was a federal program to assist qualified elderly, blind, and disabled individuals in paying for the cost of health care.

30.     Medicaid was a jointly funded, federal-state health insurance program. New Jersey Medicaid ("NJ Medicaid") provided certain health benefits in New Jersey to the disabled, as well as to individuals and families with low income and resources, through health maintenance organizations. The federal government provided matching funds to NJ Medicaid.

31.     Medicare and NJ Medicaid each were "Federal health care programs" as defined

in Title 42, United States Code, Section 1320a-7b(f) and "health care benefit programs" that

affected commerce as defined in Title 18, United States Code, Section 24(b).

32.     The Center for Medicare and Medicaid Services ("CMS") was the federal agency

responsible for the administration of the Medicare program.  CMS contracted with private

insurance companies to process and pay individual Medicare claims.  Claims for Medicare and

other insurance plans were submitted for processing and payment through the mail and/or

electronically by utilizing facilities in interstate commerce.

33.     Laboratory 1 billed Medicare, NJ Medicaid, and other insurance plans for testing

patient samples of blood, urine, and other biological materials and received payments from

Medicare, NJ Medicaid, and other insurance plans.

34.     Defendant STEVEN MONACO received a commission from Laboratory 1 when

he persuaded a physician to refer his or her patient samples of blood, urine, and other biological

materials to Laboratory 1 for testing and related services and Laboratory 1 received payment for

those tests.

35.     As a physician, defendant DANIEL OSWARI owed a duty of fidelity to his

patients, which included the duty to refrain from accepting, or agreeing to accept, bribes and

kickbacks in exchange for referring patient samples of blood, urine, and other biological

materials for testing and for signing prescriptions for compounded medications.

36.     From in or about November 2013 through in or about March 2016, in the District

of New Jersey, and elsewhere, defendants

STEVEN MONACO and
DANIEL OSWARI

did knowingly and intentionally conspire and agree with themselves and with others to commit offenses against the United States, that is:

a.    to knowingly and willfully solicit and receive remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, in order to induce any person to refer patients and cause the referral of patients for the furnishing and arranging of items and services, that is, the testing of patient samples of blood, urine, and other biological materials, for which payment was made in whole or in part under a Federal health care program, that is, Medicare and NJ Medicaid, contrary to Title 42, United States Code, Section 1320a-7b(b)(1)(A);

b.    to knowingly and willfully offer and pay any remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, to any person in order to induce such person to refer an individual for the furnishing and arranging for the furnishing of any item and service, that is, the testing of patient samples of blood, urine, and other biological materials, for which payment was made in whole or in part under a Federal health care program, that is, Medicare and NJ Medicaid, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A); and

c.    to knowingly and intentionally travel in interstate commerce and use and cause to be used the mail and facilities in interstate commerce with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, that is, commercial bribery by paying for the signing of prescriptions for compounded medications and for referrals of testing of patient samples of blood, urine, and other biological materials, contrary to N.J.S.A. § 2C:21-10 and Title 18, United States Code, Section 1952(a)(3), and thereafter, to perform acts to promote, manage, establish, carry on, and facilitate

14

the promotion, management, establishment, and carrying on of such unlawful activity, contrary

to Title 18, United States Code, Section 1952(a)(3).

### Object of the Conspiracy

37.     The object of the conspiracy was for defendants STEVEN MONACO and

DANIEL OSWARI to unlawfully enrich themselves by:  (1) paying and causing the payment of

and receiving bribes and kickbacks, in the form of cash payments and free services, for signing

prescriptions for compounded medications and referring patient samples of blood, urine, and

other biological materials for testing, and (2) receiving money from the insurance payments for

prescriptions for compounded medications and tests performed on patient samples of blood,

urine, and other biological materials.

### Manner and Means of the Conspiracy

38.     It was part of the conspiracy that in or around November 2013, defendant

STEVEN MONACO arranged for Individual 19, who was then a medical assistant for defendant

DANIEL OSWARI and paid a salary by OSWARI, to become a phlebotomist employed and

paid by Laboratory 1 and stationed in the office of OSWARI.

39.     It was further part of the conspiracy that defendant DANIEL OSWARI had

Individual 19 continue to do the same medical assistant work for OSWARI after November 2013

but with Laboratory 1 paying Individual 19's salary.

40.     It was further part of the conspiracy that from in or around November 2013

through in or around February 2016, defendant DANIEL OSWARI referred his patients'

laboratory work to Laboratory 1, including laboratory work paid by Medicare and NJ Medicaid,

instead of to another laboratory.

15

41.     It was further part of the conspiracy that, except for a period of leave, Individual 19 worked in the office of defendant DANIEL OSWARI from in or about November 2013 through in or about February 2016 and performed medical assistant and office manager services for the benefit of OSWARI, but was paid by Laboratory 1.

42.     It was further part of the conspiracy that after November 2013, defendant DANIEL OSWARI told Individual 19 and others in his office to falsely tell outsiders that Individual 19 worked only as a phlebotomist in his office and that his wife was the office manager of his office.

43.     It was further part of the conspiracy that defendant STEVEN MONACO received commissions from Laboratory 1 on the laboratory work that defendant DANIEL OSWARI referred to Laboratory 1.

44.     It was further part of the conspiracy that at the request of defendant STEVEN MONACO, defendant DANIEL OSWARI prescribed compounded medications from Compounding Pharmacy 1 and Compounding Pharmacy 2 instead of prescribing different medications or medications prepared by different pharmacies.

## Overt Acts

45.     In furtherance of the conspiracy and in order to effect the objects of the conspiracy, defendants STEVEN MONACO and DANIEL OSWARI and their co-conspirators committed or caused the commission of the following overt acts in the District of New Jersey and elsewhere:

a.     On or about November 26, 2013, Individual 19, at the request of defendant STEVEN MONACO, signed an employment agreement with Laboratory 1, stating, in substance, that Individual 19 would only perform the duties of a phlebotomist and would not in any manner

perform duties for defendant DANIEL OSWARI or his medical practice outside the scope of Individual 19's employment by Laboratory 1.

   b. On or about April 4, 2014, defendant DANIEL OSWARI falsely told a Laboratory 1 employee, in substance, that Individual 19 worked in his office only as a phlebotomist and did nothing else in his office other than phlebotomy.

   c. On or about April 17, 2014, defendant STEVEN MONACO falsely told Laboratory 1 employees, in substance, that Individual 19 worked in the office of defendant DANIEL OSWARI solely as a phlebotomist and did nothing else in the office other than phlebotomy.

   d. On or about October 20, 2014, defendants DANIEL OSWARI and STEVEN MONACO signed an agreement with Laboratory 1 stating, in substance, that the Laboratory 1 phlebotomist, who was Individual 19, would perform only the duties of a phlebotomist and would not provide any other services to OSWARI.

   e. On or about October 20, 21, and 22, 2014, defendants STEVEN MONACO and DANIEL OSWARI caused patient samples of blood, urine, and other biological materials taken at OSWARI's office to be submitted to Laboratory 1 for testing.

   f. On or about December 2, 2014 and December 3, 2014, defendants STEVEN MONACO and DANIEL OSWARI caused patient samples of blood, urine, and other biological materials taken at OSWARI's office to be submitted to Laboratory 1 for testing.

   g. On or about October 31, 2014, Individual 19 received a paycheck from Laboratory 1.

   h. On or about October 2, 2015, Individual 19 received a paycheck from Laboratory 1.

i.      On or about September 25, 2015, defendant STEVEN MONACO sent a text message informing Individual 19, in substance, that the cash kickback for that month, a portion of which Individual 19 was to give to defendant DANIEL OSWARI, would not be less than the cash kickback for the prior month.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 24-33

### (False Statements Relating to Health Care Matters)

46.      Paragraphs 1-2 and 4-23 of Count 1 are hereby realleged and incorporated as though set forth in full herein.

47.      On or about the dates specified below, in the District of New Jersey, and elsewhere, defendant AARON JONES, in a matter involving a health care benefit program, did knowingly and willfully falsify, conceal, and cover up by trick, scheme, and device a material fact, and make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services:

| Count | Date | False statement |
|-------|------|-----------------|
| 24 | 1/26/15 | AARON JONES forged the signature of MICHAEL GOLDIS on a prescription for AARON JONES. |
| 25 | 3/23/15 | AARON JONES forged the signature of MICHAEL GOLDIS on a prescription for Individual 20. |
| 26 | 3/29/15 | AARON JONES forged the signature of MICHAEL GOLDIS on a prescription for Individual 12. |
| 27 | 4/13/15 | AARON JONES forged the signature of MICHAEL GOLDIS on a prescription for Individual 11. |
| 28 | 4/27/15 | AARON JONES forged the signature of MICHAEL GOLDIS on a prescription for Individual 21. |
| 29 | 4/27/15 | AARON JONES forged the signature of MICHAEL GOLDIS on a prescription for Individual 1. |

| 30 | 5/4/15 | AARON JONES forged the signature of MICHAEL GOLDIS on a prescription for Individual 22. |
| 31 | 5/4/15 | AARON JONES forged the signature of MICHAEL GOLDIS on a prescription for Individual 18. |
| 32 | 5/13/15 | AARON JONES forged the signature of MICHAEL GOLDIS on a prescription for Individual 23. |
| 33 | 5/13/15 | AARON JONES forged the signature of MICHAEL GOLDIS on a prescription for Individual 13. |

In violation of Title 18, United States Code, Section 1035, and Title 18, United States Code, Section 2.

### FORFEITURE ALLEGATIONS

#### Count One

1.      Upon conviction of the conspiracy offense alleged in Count One of this Indictment, defendants STEVEN MONACO, DANIEL OSWARI, MICHAEL GOLDIS, and AARON JONES shall forfeit to the United States:

   a. Pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the respective defendants obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the conspiracy to commit health care fraud, contrary to 18 U.S.C. § 1347, and all property traceable to such property; and

   b. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, the respective defendants obtained that constitutes or is derived from proceeds traceable to the commission of the conspiracy to commit wire fraud, contrary to 18 U.S.C. § 1343, and all property traceable to such property.

#### Counts 2 Through 14

2.      Upon conviction of one or more of the health care fraud offense alleged in Counts 2 through 14 of this Indictment, the defendant specified in each count shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the defendant obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the

commission of the health care fraud offense charged in such count, and all property traceable to such property.

## Counts 15 Through 22

3.      Upon conviction of one or more of the wire fraud offense alleged in Counts 15 through 22 of this Indictment, the defendant specified in each count shall forfeit to the United States:

      a.   Pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the respective defendants obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the conspiracy to commit health care fraud, contrary to 18 U.S.C. § 1347, and all property traceable to such property; and

      b.   Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, the respective defendants obtained that constitutes or is derived from proceeds traceable to the commission of the conspiracy to commit wire fraud, contrary to 18 U.S.C. § 1343, and all property traceable to such property.

## Count 23

4.      Upon conviction of the conspiracy offense alleged in Count 23 of this Indictment, defendants STEVEN MONACO and DANIEL OSWARI shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the defendant obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the health care fraud offense charged in such count, and all property traceable to such property.

## Counts 24-33

5.      Upon conviction of one or more of the offenses alleged in Counts 24 through 33 of this Indictment, defendant AARON JONES shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the defendant obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the health

care fraud offense charged in such count, and all property traceable to such property.

## SUBSTITUTE ASSETS PROVISION
### (Applicable to All Forfeiture Allegations)

6.      If any of the above-described forfeitable property, as a result of any act or

omission of the respective defendant:

> a.   cannot be located upon the exercise of due diligence;
>
> b.   has been transferred or sold to, or deposited with, a third person;
>
> c.   has been placed beyond the jurisdiction of the Court;
>
> d.   has been substantially diminished in value; or
>
> e.   has been commingled with other property which cannot be subdivided without
>       difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C.

§ 2461(c) and 18 U.S.C. § 982(b), to seek forfeiture of any other property of the respective

defendant up to the value of the above-described forfeitable property.

A TRUE BILL

_____

FOREPERSON

_____
CRAIG CARPENITO
United States Attorney

21

CASE NUMBER:  19-

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

STEVEN MONACO,
DANIEL OSWARI,
MICHAEL GOLDIS, and
AARON JONES

INDICTMENT FOR
18 U.S.C. §§ 1349, 1347, 1343, 371, 1035, AND 2

A True Bill.

_____ Foreperson

CRAIG CARPENITO
U.S. ATTORNEY, NEWARK, NEW JERSEY

R. DAVID WALK, JR.
CHRISTINA O. HUD
ASSISTANT U.S. ATTORNEYS
CAMDEN, NEW JERSEY
(856) 757-5026

USA-48AD8
(Ed. 1/97)

2019 OCT -2  P 4:02
CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED